### ADMIRALTY.

## THE ENCHANTRESS.

1. A vessel belonging to loyal owners, captured by enemies at sea, and again recaptured, continues to be the property of her former owners subject to the operation of the charter party; but she is also within the admiralty jurisdiction of the Court and, therefore, liable to the ascertainment of claims for salvage.

2. After the capture, upon the appearance of the recaptors, a mariner, one of the original crew who had been retained on board, threw himself into the sea and conveyed information which led to the recapture. *Held,* that he was entitled to salvage.

### ORDERS AND OPINIONS.

Case of the schooner Enchantress. Mentioned in the preceding case as the subject of the capture by the defendant Smith and others.

## CADWALADER, J.

The recaptured vessel the Enchantress continues to be the property of her former owners subject to the operation of the charter party. The respective shippers of the cargo are said to have dealt with the charterer as if she was a general ship in which their respective adventurers were to be carried under ordinary contracts of affreightment. They are supposed to be residents all, or most of them, of Boston, or some other place or places at which they can be communicated with by telegraph or promptly by mail. Under such circumstances, I do not think they should be debarred after the delay and interruption of the voyage from an opportunity of making any suggestion by which they may think that their respective interests would be promoted. At all events I think that without some proof of notice to them, an examination of the papers in particular detail and perhaps a survey of the cargo should precede any absolute order delivering the vessel and cargo to the master for the prosecution of her originally intended voyage. The vessel should however, pass into the possession of the master for the purpose of preparing her for sea so far as this may be done consistently with such custody by the marshal as may preserve the Court's control of her and of her cargo till a final delivery of her to the master. It is said that four days will be required in order to prepare her for sea. During that period the necessary notices can be given to the charterer and respective shippers.

A monition requiring the captors and others to present

within five days their respective claims for salvage, if any are to be presented, should also be issued.

The clerk will issue such a monition directing service of it to be made on the prize master on board of the Albatross, and will also make out an order that the marshal permit the master, John Devereux, to do all that may be necessary for preparing her for sea, with leave to apply for the appointment of another master for the purpose aforesaid.

*Mr. Henry* moves for leave to amend the claim heretofore allowed by adding a prayer that the said schooner with her cargo be delivered up to the said master for the resumption and prosecution of the voyage in which she was engaged when captured and that this their petition may be deemed and taken to be such a prayer.

Which is allowed accordingly.

## DECREE.

I, JOHN CADWALADER, Judge of the District Court of the United States in and for the Eastern District of Pennsylvania, duly authorized under the Constitution and laws of the United States to hear and determine in the said district all causes and complaints as to ships or vessels and goods, etc., seized and taken as prize, including cases as well of recapture as of capture, etc., having heard and considered the merits and circumstances of a certain cause or proceeding respecting the recapture of a certain schooner called the Enchantress, whereof John Devereux was master, her tackle, apparel and furniture, and the goods, wares, and merchandise laden on board of her; And it appearing that on the high seas on the sixth day of July last the said vessel and her cargo aforesaid, had been captured by enemies of the United States in the civil war against their government, theretofore and then and now pending, and had then or shortly afterwards been placed by the said hostile captors in the custody of some of them to be carried into some hostile port or place in whose custody the same continued until the recap-

ture hereinafter mentioned; and that while the same so continued in their custody, and before they had reached any port or place on land, the said schooner and her cargo, and the said hostile persons on board of her were by the United States war steamer Albatross, whereof George A. Prentiss, Esquire, of the Navy of the United States, was master, on the high seas, recaptured and brought into the port of Philadelphia, in the district aforesaid for adjudication, which cause or proceeding was lately and still is depending before me. And George A. Coffey, Esquire, Attorney of the United States in and for the said district, and proctor for the officers and crew of the said steamer Albatross, having by libel allowed in the said proceeding, demanded and prayed that a just and reasonable salvage should be adjudged to the said recaptors and Jacob Garrick, a mariner on board of the said schooner Enchantress at the time of her said hostile capture, on the sixth day of July last, who had by the said hostile captors been forced to remain on board of her, and who on the said twenty-second of that month had, before the said recapture, in order to promote and facilitate the same, thrown himself into the sea, and having been taken up in the life-boat of the said steamer Albatross, had been on board of her at the time of the said recapture, having by petition or libel allowed in the said proceeding prayed that an adequate and reasonable proportion of salvage be awarded and adjudged to him. And Benjamin Davis, Jr., part owner of the said schooner, as well on his own behalf as on behalf of the other part owners, namely E. M. Read, Richard Plummer, Eben Manson, I. B. and T. Atwood, J. B. and W. Creasey, Ezekiel Evans, John T. Page, and Atkinson and Stanwood, of Newburyport, in Massachusetts, and the above named John Devereux, of the same place, master as aforesaid of the said schooner, having in and by a certain claim allowed in the said proceeding intervened and prayed restitution of the said vessel and her cargo to her said master for the resumption and prosecution of the voyage in which she was engaged at the time of the hostile capture aforesaid. And it appear-

ing on examination of the charter party and other papers on board of the said schooner that the respective shippers of her cargo had probably dealt with the charterer as if she was a general ship, in which their respective adventures were to be carried under ordinary contracts of affreightment and that they were all, or most of them residents of Boston, or some other place or places at which they could be communicated with by telegraph, or promptly by mail, and that five days would be required in order to prepare her for sea, it was ordered by the Court aforesaid on the ninth day of August, 1861, that the marshal should permit the said master to do all that might be necessary for preparing the said vessel for sea, so far as this might be done consistently with a retention by the marshal of such custody as might preserve the Court's control of the vessel and cargo, the Court intimating an opinion that after the delay and interruption of the voyage which had occurred, the said shippers ought not to be debarred of an opportunity of making any suggestion by which they might think that their respective interests would be promoted or at all events that without some proof of notice to them as to the major part of them, an examination of the papers in particular detail, and perhaps a survey of the cargo should precede any absolute order delivering the vessel and cargo to the master for the prosecution of the said voyage. And afterwards, on the twenty-second day of August, 1861, Mr. Henry, proctor of the said claimants, appearing on behalf also of the following named persons, that is to say, John L. Priest, the charterer, who was one of the shippers, and Cotton & Haley, Winter, Dupee & Co., Isaac Stickney & Co., The Boston & Sandwich Glass Company, H. Jacobs & Son, William Jackson, George H. Gray and Danforth, and William H. Greeley, who so far as is known are all of the other shippers except two, and stating that none of those whom he so represents and no other persons so far as he knows or believes, objects to the resumption and prosecution of the said originally intended voyages, and that he, the said proctor, is ready and willing on behalf of the parties in-

terested to pay forthwith the costs and charges of the said proceeding and such salvage, if any, as may be awarded in order to obtain the liberation of the said vessel and cargo, the cause was finally heard and adjudged upon the allegations, proofs and arguments. And the same having been considered, it is upon mature deliberation, ordered, adjudged and decreed, that there is due for salvage to the recaptors (including the said Jacob Garrick) the sum of $1,500 for their services rendered in the said recapture, and that in the distribution thereof the said Jacob Garrick do and shall receive the same part or proportion as if he had been one of the crew of the said steamer Albatross. And it is further adjudged and decreed that on the payment within three days hereafter into the registry of the court of the said sum of $1,500 and all the costs and charges of the said proceeding to be taxed and ascertained by the clerk of the court, the said vessel and her cargo be liberated from the custody of the marshal and be by him delivered to the said master, John Devereux, as her navigator for the purpose aforesaid and that in case the said payment shall not be so made unto the said registry, the clerk of this court shall ascertain and report the amounts of the said salvage compensation, and costs and charges assessable upon the said vessel and cargo respectively in the proportion of the values thereof to be by him ascertained, and a question thereupon arising whether the amount of the freight for the voyage which had been commenced, and is to be resumed as aforesaid, should be added to the value of the vessel, so that her value with this addition might constitute a contributory sum in the said apportionment, the court is as of opinion, that although the said freight, if hereafter earned should in respect of the said cargo on board, be so added in any settlement or adjustment afterwards made, yet such freight, unless, and until, it shall have been earned cannot properly be so taken into account. Wherefore it was considered and adjudged that the present apportionment should be made upon the respective values of the vessel without addition for freight, and the cargo.